IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ERIC SNYDER,

                Plaintiff,

vs.                                Case No. 16-1198-SAC

NANCY A. BERRYHILL,
Acting Commissioner of
Social Security,[1]

                Defendant.

MEMORANDUM AND ORDER

      This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits and supplemental security income payments. The matter has been fully briefed by the parties.

## I.  General legal standards

      The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards.  Glenn v. Shalala, 21 F.3d 983, 984

---

[1] On January 20, 2017, Nancy A. Berryhill replaced Carolyn W. Colvin as Acting Commissioner of Social Security.

(10th Cir. 1994).  Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational.  Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in

substantial gainful activity (SGA).  The claimant's physical or
mental impairment or impairments must be of such severity that
they are not only unable to perform their previous work but
cannot, considering their age, education, and work experience,
engage in any other kind of substantial gainful work which
exists in the national economy.  42 U.S.C. § 423(d).

　　The Commissioner has established a five-step sequential
evaluation process to determine disability.  If at any step a
finding of disability or non-disability can be made, the
Commissioner will not review the claim further.  At step one,
the agency will find non-disability unless the claimant can show
that he or she is not working at a "substantial gainful
activity."  At step two, the agency will find non-disability
unless the claimant shows that he or she has a "severe
impairment," which is defined as any "impairment or combination
of impairments which significantly limits [the claimant's]
physical or mental ability to do basic work activities."  At
step three, the agency determines whether the impairment which
enabled the claimant to survive step two is on the list of
impairments presumed severe enough to render one disabled.  If
the claimant's impairment does not meet or equal a listed
impairment, the inquiry proceeds to step four, at which the
agency assesses whether the claimant can do his or her previous
work; unless the claimant shows that he or she cannot perform

3

their previous work, they are determined not to be disabled. If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II. History of case

On May 6, 2009, ALJ Edmund Werre issued a decision denying plaintiff benefits (R. at 11-18). Plaintiff sought judicial review, and on July 8, 2011, District Court Judge Richard D.

Rogers reversed the decision of the Commissioner, and remanded the case for further hearing (R. at 465-481; Case No. 11-1010-RDR).

On January 16, 2013, administrative law judge (ALJ) James Harty issued a 2nd decision, denying plaintiff benefits (R. at 388-397). Plaintiff again sought judicial review, and on September 2, 2014, this court reversed the decision of the Commissioner, and remanded the case for further hearing (R. at 756-766; Case No. 13-1217-SAC).

ALJ Harty issued a 3rd decision on May 14, 2015 (R. at 672-683). Plaintiff alleges that he had been disabled since February 5, 2005 (R. at 672). Plaintiff is insured for disability insurance benefits through June 30, 2009 (R. at 674). At step one, the ALJ found that plaintiff did not engage in substantial gainful activity since the alleged onset date (R. at 674). At step two, the ALJ found that plaintiff had the severe impairment of degenerative disc disease of the lumbar spine, status post fusion surgery. The ALJ further found that since October 1, 2011, he has the additional impairment of obesity (R. at 674). At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 674-675). After determining plaintiff's RFC (R. at 675), the ALJ determined at step four that plaintiff is unable to perform past relevant work (R. at 681). At step five, the ALJ found that

plaintiff could perform work that exists in significant numbers in the national economy (R. at 682-683). Therefore, the ALJ concluded that plaintiff was not disabled (R. at 683).

**III.  Did the ALJ err in the relative weight accorded to the various medical opinions?**

The opinions of physicians, psychologists, or psychiatrists who have seen a claimant over a period of time for purposes of treatment are given more weight than the views of consulting physicians or those who only review the medical records and never examine the claimant. The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all. Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004). When a treating source opinion is inconsistent with the other medical evidence, the ALJ's task is to examine the other medical source's reports to see if they outweigh the treating source's reports, not the other way around. Treating source opinions are given particular weight because of their unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations. If an ALJ intends to rely on a nontreating physician or examiner's opinion, he must explain the weight he is giving to it. Hamlin

v. Barnhart, 365 F.3d 1208, 1215 (10th Cir. 2004).  The ALJ must

provide a legally sufficient explanation for rejecting the

opinion of treating medical sources in favor of non-examining or

consulting medical sources.  Robinson, 366 F.3d at 1084.

A treating physician's opinion about the nature and

severity of the claimant's impairments should be given

controlling weight by the Commissioner if well supported by

clinical and laboratory diagnostic techniques and if it is not

inconsistent with other substantial evidence in the record.

Castellano v. Secretary of Health & Human Services, 26 F.3d

1027, 1029 (10th Cir. 1994); 20 C.F.R. §§ 404.1527(d)(2),

416.927(d)(2).  When a treating physician opinion is not given

controlling weight, the ALJ must nonetheless specify what lesser

weight he assigned the treating physician opinion.  Robinson v.

Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004).  A treating

source opinion not entitled to controlling weight is still

entitled to deference and must be weighed using all of the

following factors:

(1) the length of the treatment relationship and the frequency
of examination;
(2) the nature and extent of the treatment relationship,
including the treatment provided and the kind of examination or
testing performed;
(3) the degree to which the physician's opinion is supported by
relevant evidence;
(4) consistency between the opinion and the record as a whole;
(5) whether or not the physician is a specialist in the area
upon which an opinion is rendered; and

(6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

Watkins v. Barnhart, 350 F.3d 1297, 1300-1301 (10th Cir. 2003).

After considering the above factors, the ALJ must give good reasons in his/her decision for the weight he/she ultimately assigns the opinion.  If the ALJ rejects the opinion completely, he/she must then give specific, legitimate reasons for doing so. Watkins, 350 F.3d at 1301.

The court will not reweigh the evidence or substitute its judgment for that of the Commissioner.  Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005); White v. Barnhart, 287 F.3d 903, 905, 908, 909 (10th Cir. 2002).  Although the court will not reweigh the evidence, the conclusions reached by the ALJ must be reasonable and consistent with the evidence.  See Glenn v. Shalala, 21 F.3d 983, 988 (10th Cir. 1994)(the court must affirm if, considering the evidence as a whole, there is sufficient evidence which a reasonable mind might accept as adequate to support a conclusion).  The court can only review the sufficiency of the evidence.  Although the evidence may support a contrary finding, the court cannot displace the agency's choice between two fairly conflicting views, even though the court may have justifiably made a different choice had the matter been before it de novo.  Oldham v. Astrue, 509 F.3d 1254, 1257-1258 (10th Cir. 2007).

Dr. Winkler testified at a hearing on April 15, 2015 (R. at 692, 714-725). She reviewed claimant's file, including all of the medical records (R. at 714). Dr. Winkler testified that plaintiff's straight-leg raise tests were all over the place, and that the significant variations in this case are not typical (R. at 716). Dr. Winkler further stated that plaintiff's alleged limitations are more significant than you would normally expect, based on what objective evidence there was, including the follow-up MRIs after surgery, as well as two normal EMG/NCV tests performed in 2007 and 2012 (R. at 717).

According to Dr. Winkler, the normal EMGs and NCVs would indicate no nerve root impingement, and no nerve damage. There would be no foot drop and you would not normally need a cane with the normal test results (R. at 717). Dr. Winkler questioned the finding of Dr. Gorecki regarding a non-union in the lumber spine based on the MRI (R. at 718). He found no medical basis for a cane or wheelchair (R. at 718-719).

Dr. Winkler testified that plaintiff's symptoms seemed to be out of proportion to what you would normally expect based on the fairly mild changes in the MRI after surgery and the two normal EMG/NCVs that were done in 2007 and 2012 (R. at 719). Dr. Winkler also indicated that failed back surgery is not a valid diagnosis in this case (R. at 719-720). Dr. Winkler then provided RFCs for the plaintiff, indicating that due to

9

increased weight, plaintiff's RFC increased in October 2011 (R. at 721-724). The ALJ gave great weight to the opinions of Dr. Winkler because her opinions were well-explained, informed by her extensive review of the record and by her clinical practice treating patients with back pain, and is consistent with the evidence (R. at 680). The ALJ's RFC findings reflect the opinions of Dr. Winkler (R. at 675).

Dr. Gorecki, plaintiff's treating physician, stated on January 8, 2008 that plaintiff's ongoing incapacitating back and bilateral hip pain restricted him to working no more than 4 hours a day. He also opined that plaintiff cannot bend forward or stoop, or pick up anything from the floor (R. at 320). On January 9, 2009, Dr. Gorecki filled out a form indicating that plaintiff can only sit, stand and walk for 4 hours in an 8 hour workday (R. at 355-358). The ALJ set out in detail the evidence which he relied on in discounting the opinions of Dr. Gorecki (R. at 680). This included the testimony of Dr. Winkler, who questioned some of the findings of Dr. Gorecki (R. at 717-718).

The record also contains a physical RFC assessment by Dr. Miller, an examining physician, dated October 12, 2011 (R. at 610-615). Dr. Miller opined that plaintiff could sit for 4 hours a day, stand for 2 hours a day, and walk for 2 hours a day (R. at 611). However, Dr. Miller opined that plaintiff required the use of a cane (R. at 611). The ALJ accorded little weight

to this opinion (R. at 681).  Dr. Winkler testified that she saw
no medical basis requiring the use of a cane (R. at 718).
Furthermore, Dr. Gorecki stated in his report that plaintiff did
not require the use of a cane or other assistive device for
standing or walking (R. at 357).

   The record also contains a physical therapy evaluation
conducted on December 3, 2012 (R. at 643-645).[2]  The evaluation
indicated that plaintiff had a limited range of mobility.  This
included the statement of the physical therapist that plaintiff
was only able to ambulate in the clinic with a single-point cane
for a total distance of 200 feet (R. at 645).[3]  During the
evaluation, plaintiff was allowed to use a cane to complete
numerous tasks (R. at 643-645).  The ALJ discounted this
evaluation, noting that testing performed on the same day showed
that plaintiff was within normal limits, with no clear evidence

---

[2] Plaintiff's reply brief states that Dr. Winkler testified that this evaluation was missing in the record, and therefore was not considered by Dr. Winkler (Doc. 19 at 7).  However, this argument was not raised in plaintiff's initial brief. Courts do not ordinarily review issues raised for the first time in a reply brief.  Stump v. Gates, 211 F.3d 527, 533 (10th Cir. 2000); Liebau v. Columbia Casualty Co., 176 F. Supp.2d 1236, 1244-45 (D. Kan. 2001).  Furthermore, plaintiff, in his initial brief, stated that "the ALJ asked Dr. Winkler about an incident when plaintiff showed up in wheel chair for his physical therapy evaluation by Jim Tharp on 12/3/12 [22F]" (Doc. 15 at 9).  Finally, Dr. Winkler testified that:

> The one thing I was looking for actually in the record, was that he referred to a back to work
> physical therapy evaluation in 2009, and he mentioned in the physical therapy evaluation done, I
> think in 22F that he had done that, but that's missing.

(R. at 719).  It therefore appears that Dr. Winkler was referencing a missing evaluation done in 2009, which plaintiff had mentioned during the evaluation in Exhibit 22F, which is the Dec. 3, 2012 evaluation.  Thus, it appears that the Dec. 3, 2012 evaluation, which is Exhibit 22F, was before Dr. Winkler when he testified.  Dr. Winkler had earlier testified that he had the exhibits "up to 25F" (R. at 714).

[3] However, Dr. Gorecki indicated that plaintiff can walk for at least 10 minutes at a time, and 90 minutes over an 8 hour workday (R. at 356), and Dr. Miller indicated that plaintiff can walk for 2 hours at one time without interruption (R. at 611).

of neuropathy, plexopathy, myopathy, or radiculopathy (R. at 647, 679). Furthermore, Dr. Winkler testified that there was no medical basis for the requirement of a cane (R. at 718), and Dr. Gorecki, plaintiff's treating physician, stated that a cane or other assistive device was not needed for standing or walking (R. at 357). The court finds that medical testing and the evidence from acceptable medical sources, noted above, provides a valid basis for questioning the findings of this evaluation.

The court finds no clear error by the ALJ in his analysis of the medical opinion evidence. The ALJ set out in detail his reasons for discounting the opinions of Dr. Gorecki and Dr. Miller, and the court finds no clear error in that analysis. Certainly, contradictory evidence existed in the record which provided a valid basis for discounting those opinions. Furthermore, the ALJ could reasonably rely on the opinions of Dr. Winkler, who provided 12 pages of testimony which discussed in some detail the medical evidence and the opinions of Dr. Winkler regarding plaintiff's RFC limitations. The court will not reweigh the evidence. The court finds that the balance of the ALJ's analysis of the medical opinion evidence is supported by substantial evidence. See Barnum v. Barnhart, 385 F.3d 1268, 1274 (10th Cir. 2004)(while the court had some concerns about the ALJ's reliance on plaintiff's alleged failure to follow a weight loss program and her performance of certain household chores,

the court concluded that the balance of the ALJ's credibility analysis was supported by substantial evidence in the record).

Furthermore, the ALJ did not need to explicitly discuss all of the § 404.1527 factors for each of the medical opinions. Oldham v. Astrue, 509 F.3d 1254, 1258 (10th Cir. 2007). It is sufficient if the ALJ provided good reasons in her decision for the weight she gave to the treating source opinions. Nothing more is required. Id.

## IV. Did the ALJ err in evaluating plaintiff's credibility?

Plaintiff also alleges error in the ALJ's credibility analysis. Credibility determinations are peculiarly the province of the finder of fact, and a court will not upset such determinations when supported by substantial evidence. However, findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings. Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). Furthermore, the ALJ cannot ignore evidence favorable to the plaintiff. Owen v. Chater, 913 F. Supp. 1413, 1420 (D. Kan. 1995).

When analyzing evidence of pain, the court does not require a formalistic factor-by-factor recitation of the evidence. So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the ALJ will be deemed to have satisfied the requirements set forth in Kepler. White v.

Barnhart, 287 F.3d 903, 909 (10th Cir. 2002); Qualls v. Apfel,
206 F.3d 1368, 1372 (10th Cir. 2000).  Furthermore, the ALJ need
not discuss every relevant factor in evaluating pain testimony.
Bates v. Barnhart, 222 F. Supp.2d 1252, 1260 (D. Kan. 2002).  An
ALJ must therefore explain and support with substantial evidence
which part(s) of claimant's testimony he did not believe and
why.  McGoffin v. Barnhart, 288 F.3d 1248, 1254 (10th Cir.
2002).  It is error for the ALJ to use standard boilerplate
language which fails to set forth the specific evidence the ALJ
considered in determining that a claimant's complaints were not
credible.  Hardman v. Barnhart, 362 F.3d 676, 679 (10th Cir.
2004).  On the other hand, an ALJ's credibility determination
which does not rest on mere boilerplate language, but which is
linked to specific findings of fact fairly derived from the
record, will be affirmed by the court.  White, 287 F.3d at 909-
910.

    The court finds no clear error by the ALJ in his
credibility analysis.  The ALJ reasonably relied on the opinions
of Dr. Winkler and the medical and other evidence in the record
in finding that plaintiff's allegations of pain and limitations
were somewhat exaggerated (R. at 681).  The balance of the ALJ's
credibility analysis was supported by substantial evidence in
the record.  See Barnum v. Barnhart, 385 F.3d 1268, 1274 (10th
Cir. 2004)(while the court had some concerns about the ALJ's

reliance on plaintiff's alleged failure to follow a weight loss program and her performance of certain household chores, the court concluded that the balance of the ALJ's credibility analysis was supported by substantial evidence in the record).

IT IS THEREFORE ORDERED that the judgment of the Commissioner is affirmed pursuant to sentence four of 42 U.S.C. § 405(g).

Dated this 18th day of July 2017, Topeka, Kansas.


s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge